UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| WILLIAM STEGALL, on Behalf of Himself and All Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | |
| CHARLES L. LADNER, JAMES F. CARLIN, WILLIAM H. CUNNINGHAM, RONALD R. DION, STEVEN PRUCHANSKY, NORMAN H. SMITH, JOHN P. TOOLAN, JAMES A. SHEPHERDSON, DENNIS S. ARONOWITZ, RICHARD P. CHAPMAN, JR., WILLIAM J. COSGROVE, RICHARD A. FARRELL, WILLIAM F. GLAVIN, JOHN A. MOORE, PATTI McGILL PETERSON, JOHN W. PRATT, JOHN HANCOCK FINANCIAL SERVICES, INC., and JOHN HANCOCK ADVISERS, LLC | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 05 10062 DPW |
| Defendants. | ) ) | |

## **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT**

Wm. Shaw McDermott, BBO #330860
Steven P. Wright, BBO #648575
Jason N. Golub, BBO #660114
Kirkpatrick & Lockhart Nicholson Graham LLP
75 State Street
Boston, MA  02109
(617) 261-3100

April 29, 2005

Attorneys for the Defendants

BOS-784680 v8 0516895-0901

Pursuant to Fed. R. Civ. P. 12(b)(6) and Local Rule 23.1, Defendants Charles L. Ladner, James F. Carlin, William H. Cunningham, Ronald R. Dion, Steven Pruchansky, Norman H. Smith, John P. Toolan, James A. Shepherdson, Dennis S. Aronowitz, Richard P. Chapman, Jr., William J. Cosgrove, Richard A. Farrell, William F. Glavin, John A. Moore, Patti McGill Peterson, John W. Pratt, John Hancock Financial Services, Inc., and John Hancock Advisers, LLC, by and through their counsel, Kirkpatrick & Lockhart Nicholson Graham LLP, submit this Memorandum of Law in support of their Motion to Dismiss the claims asserted against them in Plaintiff William Stegall's ("Plaintiff" or "Stegall") Class Action Complaint (the "Complaint").

## PRELIMINARY STATEMENT

Plaintiff filed this Complaint on January 15, 2005, naming as defendants, Charles L. Ladner, James F. Carlin, William H. Cunningham, Ronald R. Dion, Steven Pruchansky, Norman H. Smith, John P. Toolan, James A. Shepherdson, Dennis S. Aronowitz, Richard P. Chapman, Jr., William J. Cosgrove, Richard A. Farrell, William F. Glavin, John A. Moore, Patti McGill Peterson, John W. Pratt (collectively, the "Trustee Defendants"),[1] John Hancock Financial Services, Inc., John Hancock Advisers, LLC (the "Hancock Defendants"), and John Does No. 1

---

[1]      Plaintiff incorrectly refers to the Trustee Defendants as "Director Defendants" based on the mistaken allegation that these defendants "are each members of the Board of Directors for the Funds." *See* Complaint ("Compl."), ¶ 12. In fact, the Trustee Defendants served as trustees of various Massachusetts business trusts under which the Hancock Funds are organized. *See, e.g.*, Amended and Restated Declaration of Trust of John Hancock Series Trust ("John Hancock Series Trust"), dated March 8, 2005, a true and accurate copy of which is attached to the Affidavit of Steven P. Wright ("Wright Aff."), as Exhibit 1. The John Hancock Series Trust, as well as all of the other relevant declarations of trust, are public documents filed with the Securities and Exchange Commission and therefore may be referred to and relied upon in support of this Motion to Dismiss. *See Hogan v. Eastern Enters./Boston Gas*, 165 F. Supp. 2d 55, 58 (D. Mass. 2001).

through 100 (collectively referred to herein as "Defendants").[2] The lawsuit is a purported class action brought on behalf of investors in open-ended mutual funds with equity security holdings in the John Hancock Family of Funds (the "Hancock Funds" or the "Funds"), against the Defendant Trustees, the Hancock Defendants, and other affiliates of the Funds. In the Complaint, Plaintiff alleges that all of the Defendants breached fiduciary duties and duties of care owed to Plaintiff, including duties arising under Sections 36(a), 36(b), and 47(b) of the Investment Company Act of 1940 ("ICA"), as amended, 15 U.S.C. § 80a *et seq.*, for failing to ensure that the Hancock Funds participated in securities class action settlements for which the Funds were allegedly eligible.

As discussed more fully below, the Complaint must be dismissed for the following reasons:

1.    Plaintiff's Complaint fails to allege facts sufficient to establish standing, and in any event, Plaintiff lacks standing to sue on behalf of mutual funds in which he owns no shares.

2.    Plaintiff's claims are derivative in nature and Plaintiff's failure to comply with the Federal Rules of Civil Procedure and to make demand as required under Massachusetts law mandates dismissal of Counts I, II, III, and IV of the Complaint.

3.    Count III of Plaintiff's Complaint must be dismissed because there is no private right of action for shareholders under Section 36(a) of the ICA. Moreover, even if Plaintiff could maintain such an action, the Complaint fails to state a claim under Section 36(a) because Plaintiff has not alleged the standard of culpability contemplated by that section.

4.    Count V of Plaintiff's Complaint must be dismissed because Section 47(b) merely provides an equitable remedy for violations of other sections of the ICA. In addition, Plaintiff

---

[2]    Plaintiff has stipulated to the dismissal of the remaining defendants that were named in the Complaint with the exception of Fund Asset Management, LP, which is represented by separate counsel.

has not alleged that there is anything improper regarding any advisory fee contract, which is required to maintain an action under Section 47(b) of the ICA.

5.     Count IV of Plaintiff's Complaint must be dismissed as a matter of law because Plaintiff does not allege that any of the Defendants charged excessive advisory fees, which is required to maintain a claim under Section 36(b) of the ICA.

6.     Plaintiff cannot maintain his claims against the Trustee Defendants because the trustees do not owe a duty to Plaintiff as an individual shareholder. Further, Trustee Defendants are protected by the business judgment rule from liability for the claim stated in Count II of the Complaint, which alleges nothing more than simple negligence.

7.     In the event that Plaintiff's claims under the ICA are dismissed, the Court lacks subject matter jurisdiction over this action and Plaintiff's state law claims must be dismissed.

## STATEMENT OF FACTS

Plaintiff brought this lawsuit against all of the Defendants, on behalf of himself and all others similarly situated, for compensatory and punitive damages, forfeiture of all commissions and fees paid by class members, costs, and attorneys' fees. Compl., ¶ 1. Plaintiff seeks class certification of this action on behalf of all persons owning one of the Hancock Funds at any time between January 10, 2002 and January 10, 2005, and who were damaged by the Defendants' alleged conduct (the "Class Period"). *Id.*, ¶ 16.

The alleged basis of Plaintiff's lawsuit is that during the Class Period, the Hancock Funds were eligible to participate in the recovery of money resulting from hundreds of securities class action settlements, but the Defendants failed to submit proof of claim forms in such cases, thereby forfeiting Plaintiff's rightful share of the recovery obtained in the settlements. *Id.*, ¶¶ 24 - 26. According to Plaintiff, if the Defendants had submitted the proper proof of claim forms on

behalf of the Hancock Funds in these class action settlements, the settlement monies would have increased the total assets of the Funds, and such increase would have been allocated to the then-current investors upon a recalculation of the Net Asset Value ("NAV"). *Id.*, ¶ 25.[3]

Based on the foregoing allegations, Plaintiff asserts the following claims:

- All of the Defendants breached their fiduciary duties and were negligent under the common law (Counts I and II);

- All of the Defendants breached their fiduciary duties under Section 36(a) of the ICA (Count III);

- The Hancock Defendants breached their fiduciary duties under Section 36(b) of the ICA (Count IV); and

- The unidentified "agreements" between the Hancock Defendants and the Hancock Funds are unenforceable (Count V).

For the reasons discussed below, Plaintiff's Complaint must be dismissed in its entirety.

## ARGUMENT

Plaintiff's Complaint is but one of over forty complaints against different fund families filed by a single consortium of plaintiffs' counsel simultaneously in January 2005 – each complaint virtually identical to the Complaint here, each listing the same 136 class actions settlements, and each asserting that the funds in question owned "many if not all" of the securities on the list. Compl., ¶¶ 5, 24. Given the generic nature of the Complaint, it is not surprising that Plaintiff concedes that the bulk of the substantive allegations in the Complaint are based "upon information and belief that the allegations are *likely to have evidentiary support*" and further represents that such allegations will be withdrawn or corrected if reasonable

---

[3]    In the Complaint, Plaintiff defines Net Asset Value as the value of each investor's portion of pooled assets in a mutual fund, which is determined by taking the market value of all of the mutual fund's portfolio securities, adding the value of any other fund assets, subtracting fund liabilities, and dividing the result by the number of mutual fund shares outstanding. *See* Compl., ¶ 3. According to Plaintiff's Complaint, Net Asset Value is computed daily so that any gain or loss in a mutual fund's assets is immediately allocated to the individual investors as of that specific date. *Id.*

opportunity for further investigation or discovery indicates insufficient evidentiary support. *See* Compl., ¶ 5 (emphasis added). Despite the serious questions concerning the legitimacy of Plaintiff's Complaint, all of the factual allegations are taken as true for the purposes of this motion. Regardless, as argued below, Plaintiff simply cannot maintain his claims as a matter of law, and therefore Plaintiff's Complaint must be dismissed in its entirety.

## I.     PLAINTIFF LACKS STANDING TO PURSUE CLAIMS RELATING TO FUNDS IN WHICH HE NEVER OWNED SHARES

Plaintiff's failure to allege standing is fatal to all counts of his Complaint. In every case, the issue of Article III standing is a threshold issue. *Warth v. Seldin*, 422 U.S. 490, 498 (1975). Indeed, federal courts are without subject matter jurisdiction to adjudicate a claim for which the named plaintiffs do not have standing to sue. *See, e.g., City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983); *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 37 (1976). Furthermore, a plaintiff has the burden of pleading facts sufficient to show standing to assert claims in federal court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Franchise Tax Bd. v. Alcan Aluminum, Ltd.,* 493 U.S. 331, 335 (1990). To meet this burden, a plaintiff must plead specific facts showing that he has suffered a personal injury that is fairly traceable to defendants' conduct, and that is likely to be redressed by the relief requested. *Lujan*, 504 U.S. at 560 n.1, 561. Strict adherence to these requirements is particularly important in securities litigation to "curb the risks of vexatious litigation and abuse of discovery." *In re Bank of Boston Corp. Secs. Litig.*, 762 F. Supp. 1525, 1531 (D. Mass. 1991). In this case, Plaintiff has not pleaded facts establishing either that he has suffered any injury from the Defendants' breaches of duty he alleges, or that the relief he seeks would remedy any such injury.

According to the Complaint, Plaintiff owned only "one of the Funds" during the alleged class period. Compl., ¶ 10. Nowhere does the pleading state *which* fund he owned, *when* he

made his investment, or for how long he held that investment. Nor does the Complaint allege that the specific fund owned by Plaintiff was eligible for class action settlement proceeds, that such fund owned any of the securities listed in the Complaint as being the subject of class actions, or even that the fund in question owned the only type of security implicated in this action (i.e., equity securities rather than debt/fixed-income instruments). Thus, Plaintiff has failed to allege any factual basis to conclude that he suffered any of the harm set forth in the Complaint.

Moreover, it does not matter that other members of the putative class might own shares of Funds that would be entitled to settlement proceeds, even if Plaintiff's fund would not. As the Supreme Court has held, named plaintiffs who represent a class "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Warth*, 422 U.S. at 502. *See also Adair v. Sorenson*, 134 F.R.D. 13, 16 (D. Mass. 1991) (court must assess standing "based upon the standing of the named plaintiff," not putative class members).

Finally, even if Plaintiff did own shares in a fund that invested in securities that were subject to "unclaimed" settlements, as alleged in the Complaint, he would have no standing to assert claims on behalf of shareholders in *other* funds. *See, e.g., Kauffman v. Dreyfus Fund, Inc.* 434 F.2d 727, 734 (3d Cir. 1970) (named plaintiff could not sue concerning mutual funds in which he did not own shares because "a predicate to appellee's right to represent a class is his eligibility to sue in his own right. What he may not achieve himself, he may not accomplish as a representative of a class."); *In re Eaton Vance Corp. Sec. Litig.*, 219 F.R.D. 38, 41 (D. Mass. 2003) (no standing to sue on behalf of investors in funds plaintiff does not own); *Nenni v. Dean Witter Reynolds, Inc.*, 1999 U.S. Dist. LEXIS 23351, at *6 (D. Mass. Sept. 29, 1999) ("A named

plaintiff must share the same injury with the others he or she represents in order to have standing as the class representative."); *Green v. Nuveen Advisory Corp.*, 186 F.R.D. 486, 493 (N.D. Ill. 1999) ("Pursuant to 15 U.S.C. § 80a-35(b), plaintiffs do not have standing to bring a § 36(b) claim on behalf of investment companies other than the Funds in which they are security holders."). Accordingly, Plaintiff simply does not have standing to maintain claims in this matter, and without question, does not have standing to pursue claims on behalf of the putative class relating to funds in which he never owned shares.

## II.    COUNTS I, II, III AND V MUST BE DISMISSED BECAUSE THEY ARE DERIVATIVE CLAIMS AND PLAINTIFF FAILED TO MAKE THE REQUIRED DEMAND ON THE FUNDS' TRUSTEES

### A.    Plaintiff's Claims Alleging Injury To The Funds – And Only Indirectly To Plaintiff – Must Be Brought As Derivative Claims

Plaintiff has asserted claims in Counts I, II, III, and V directly, rather than derivatively, on behalf of the Funds, alleging that the Defendants breached various duties owed directly to the shareholders. Those claims, purportedly brought under Sections 36(a) and 47(b) of the ICA, and as common law fiduciary duty and negligence claims – must be dismissed because, under well-established law, they are derivative in nature.[4]

"A shareholder does not acquire standing to maintain a direct action when the alleged injury is inflicted on the corporation and the only injury to the shareholder is the indirect harm which consists of the diminution in the value of his or her shares." *Lapidus v. Hecht*, 232 F.3d 679, 683 (9th Cir. 2000). Whether a fund shareholder's claims are properly brought through

---

[4]    Plaintiff's claim under Section 36(b) of the ICA (Count IV) is also brought as a direct claim. In theory, such a claim could survive as an individual claim because Congress expressly created a direct private right of action for shareholders under that section. As argued below, Plaintiff's Section 36(b) claim cannot survive a Rule 12(b)(6) challenge in this case. *See* section V, *infra.*

either direct or derivative action is determined by the law of the state of incorporation of the fund. *Id.* at 682. The law of Massachusetts controls because each of the Funds is a Massachusetts business trust. *See In re Sagent Tech., Inc.,* 278 F. Supp. 2d 1079, 1087 (N.D. Cal. 2003).[5]

Under Massachusetts law, "a shareholder may not directly bring claims that belong to the corporation." *Green,* 186 F.R.D. at 489 (citing *Bessette v. Bessette*, 385 Mass. 806, 809 (1982)); *accord Blasberg v. Oxbow Power Corp.*, 934 F. Supp. 21, 26 (D. Mass. 1996). Where injury is indirect, in the form of a reduction in share value, "the only remedy that might be available (other than a direct action by the corporation) [is] a stockholder's derivative suit." *Pagounis v. Pendleton*, 52 Mass. App. Ct. 270, 275 (2001); *see also Cigal v. Leader Dev. Corp.*, 408 Mass. 212, 219 (1990) (holding that breach of fiduciary duty claims against corporate directors seek recovery of funds owed to the corporation and are therefore derivative). *See also Hurley v. Fed. Deposit Ins. Corp.*, 719 F. Supp. 27, 30 (D. Mass. 1989) ("Corporate mismanagement . . . resulting in lower stock prices cannot form the basis for an individual shareholder lawsuit against the wrongdoer."); *Mun. Light Co. v. Commonwealth*, 34 Mass. App. Ct. 162, 170-71 (1993) ("Stockholders may not in their own names bring an action for damage to the corporation in which they hold stock; they may bring a derivative action in the name of the corporation."); *Jackson v. Stuhlfire*, 28 Mass. App. Ct. 924, 925 (1989) (holding that action must be brought derivatively if wrong affects shareholders "merely as they are the owners of the corporate stock") (citation omitted).

---

[5]    Massachusetts business trusts are treated like corporations when applying Massachusetts law regarding shareholder derivative suits. *Green*, 186 F.R.D. at 489 n.2 (citing cases).

In this case, Plaintiff's claims in Counts I, II, III and V can only be brought derivatively. These claims seek redress for actions alleged to have harmed the Hancock Funds in the first instance, and to have injured Plaintiff only indirectly, by reducing the value of his investments. As alleged in the Complaint, the Hancock Funds – not the shareholders – owned the securities that are subject to the settlements. *See* Compl., ¶ 24. The ownership of those shares made the Hancock Funds – and not the shareholders – eligible to participate in the settlements. *Id.* The forms used to obtain settlement proceeds allegedly should have been submitted "on behalf of the Funds," *id.*, ¶ 25, and any proceeds from such settlements should have been paid to the Hancock Funds. *Id.* Thus, Plaintiff, like every other shareholder in his Fund, would have been affected only because the allegedly "forfeited" settlements would not have been included in the daily recalculation of the Funds' net asset value, and then "passed on" to investors in the form of higher share values. *Id.*, ¶¶ 3, 25-26.

Recent authority from sister federal courts have required dismissal of claims that are derivative in nature although dressed up as direct claims under federal statutory or state common law theories. *See Lapidus*, 232 F.3d at 683 (holding no direct action where "the only injury to the shareholder is the indirect harm which consists of the diminution in the value of his or her shares"); *In re Merrill Lynch & Co., Inc. Research Reports Secs. Litig.*, 272 F. Supp. 2d 243, 260-61 (S.D.N.Y. 2003) (ruling that claims that Fund's net asset value decline "plainly show that plaintiff's alleged injury was derivative, by virtue of her ownership of shares in the Fund"); *In re Dreyfus Aggressive Growth Mut. Fund Litig.*, 2000 WL 10211, at *4 (S.D.N.Y. Jan. 6, 2000) (same); *Green*, 186 F.R.D. at 489-90 (dismissing direct claim asserted under Section 36(a) since "[d]iminution in value of the common stock...is an injury to the Funds, and any harm to the plaintiffs as common shareholders is derivative in nature"); *In re Nuveen Fund Litig.*, 855 F.

Supp. 950, 954 (N.D. Ill. 1994) (dismissing direct claims under Section 36(a) and common law because injury alleged, dilution of net asset value, is "not distinct from the alleged injuries to all the Nuveen funds' shareholders").

### B. Even If Plaintiff Had Brought His Claims Derivatively, Plaintiff's Failure To Make Demand On The Board Is Fatal To His Claims

Even if Plaintiff had brought his claims derivatively, the claims would not have survived because Plaintiff was required to make a demand on the Funds' board of trustees to investigate his allegations and, if appropriate, to seek redress through either litigation or other means, before commencing this litigation. Under the Federal Rules, a shareholder asserting a derivative claim must "allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority." Fed. R. Civ. P. 23.1. This rule serves to ensure that the decision to initiate litigation is made, in the first instance, by the board itself, and prevents shareholders from usurping that role. *See Kamen v. Kemper Fin. Servs., Inc.,* 500 U.S. 90, 96-97 (1991); *Daily Income Fund, Inc. v. Fox,* 464 U.S. 523, 530 (1984). This is "not a technical rule of pleading, but one of substantive right." *In re Kauffman Mut. Funds Actions,* 479 F.2d 257, 263 (1st Cir. 1973) (quoting *Bartlett v. New York, N.H. & H.R. Co.,* 221 Mass. 530, 538 (1915)). Here, Plaintiff does not, and indeed cannot, allege that any demand was made on the trustees, and, for this reason alone, Plaintiff's claims must be dismissed.

Further, there is no basis under applicable law to excuse the demand requirement. Whether the requirement of demand may be excused is determined according to the law of the state under which the entity was organized. *Kamen,* 500 U.S. at 96-97; *In re Sagent Tech., Inc.,* 278 F. Supp. 2d at 1087. As discussed above, the Funds at issue here are organized as Massachusetts business trusts, and therefore the law of the Commonwealth applies.

In Massachusetts, demand is never excused. Instead, pursuant to a recent revision of the Commonwealth's Business Corporations Act, demand is now "universally" required in Massachusetts.[6] *See* Mass. Gen. Laws ch. 156D § 7.42 (2003). Under the statute, which took effect on July 1, 2004, "[n]o shareholder may commence a derivative proceeding until: (1) a written demand has been made upon the corporation to take suitable action; and (2) 90 days have elapsed from the date demand was made." *Id.* There are no exceptions to the demand requirement. *See Demoulas v. Demoulas Super Mkts., Inc.,* 2004 WL 1895052, at *1 n.3 (Mass. Super. Ct. Aug. 2, 2004) (holding that pursuant to § 7.42 of the Massachusetts Business Corporation Act, "a demand must be made prior to the commencement of every derivative case"). The rule enables a board to understand the conduct complained of, and consider corrective action, before litigation is begun, and eliminates the cost and burden to parties and the court of litigating the question whether demand was required. *See Werbowsky v. Collomb,* 362 Md. 581, 613 (2001).

In sum, the Complaint does not comply with the requirement of Rule 23.1 by describing the steps taken, if any, to cause the Funds' board to rectify the alleged deficiencies regarding participation in class action settlements. Nor did Plaintiff take any such steps before filing suit. Further, Plaintiff has not – and cannot – allege why such a demand should be excused in this case. Plaintiff's failure to satisfy these mandatory prerequisites is fatal to its claims and

---

[6]    As discussed above, Massachusetts business trusts have traditionally been treated like corporations when applying Massachusetts law regarding shareholder derivative suits and it would be anomalous if the newly enacted "universal demand" statute did not apply to this action. *Green,* 186 F.R.D. at 489 n.2 (N.D. Ill. 1999) (citing cases). *See also Byrne v. Am. Foreign Ins. Ass'n.,* 3 F.R.D. 1, 2 (D. Mass. 1943) (noting that the Massachusetts business trust has "practically all the attributes of a corporation") (citation omitted); *see also Woonsocket Shopping Ctr. v. Wonder Props.,* 1996 WL 1186816, at *4 (Mass. Super. Ct. Feb. 23, 1996) (Massachusetts business trusts are "in many respects like a corporation.").

precludes Plaintiff from maintaining this action even as a shareholder derivative suit.

Accordingly, Counts I, II, III and V must be dismissed.

## III.    COUNT III MUST BE DISMISSED BECAUSE THERE IS NO PRIVATE RIGHT OF ACTION FOR SHAREHOLDERS UNDER SECTION 36(a) OF THE ICA. EVEN IF THERE WAS A PRIVATE RIGHT OF ACTION, PLAINTIFF HAS FAILED TO STATE A CLAIM THEREUNDER.

### A.    There Is No Express Or Implied Private Right Of Action Under Section 36(a) Of The ICA

The only express private right of action provided under the ICA is found in Section

36(b):

> An action may be brought under this subsection by the Commission, *or by a security holder of such registered investment company* on behalf of such company, against such investment adviser, or any affiliated person of such investment adviser…for breach of fiduciary duty in respect of such compensation or payments paid by such registered investment company or by the security holders thereof to such investment adviser or person.

ICA § 36(b), 15 U.S.C. § 80a-35(b) (emphasis added).  By contrast, Section 36(a) does not

contain an express private right of action, and there is no basis to assert that such a right could be

implied.  Section 36(a) provides only for an action by the SEC:

> *The Commission* is authorized to bring an action in the proper district court of the United States…alleging that a person serving or acting in one or more of the following capacities has engaged within five years of the commencement of the action or is about to engage in any act or practice constituting a breach of fiduciary duty involving personal misconduct… .

ICA § 36(a), 15 U.S.C. § 80a-35(a) (emphasis added).

The Supreme Court has made it clear that federal courts should refuse to read a private

right of action into a statute where, as here, there is no basis in the statute's plain language to

imply such a right.  *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 286 (2002) ("[W]here the text and

structure of a statute provide no indication that Congress intends to create new individual rights,

there is no basis for a private suit."); *Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 67 n.3

(2001); *Alexander v. Sandoval*, 532 U.S. 275, 287 (2001). In *Olmstead v. Pruco Life Ins. Co.*, 283 F.3d 429 (2d Cir. 2002), the Second Circuit applied these principles and refused to find an implied right of action under two sections of the ICA. "A court must 'began [its] search for Congress's intent with the text and structure' of the statute, and cannot ordinarily conclude that Congress intended to create a right of action when none was explicitly provided." *Id.* at 432 (internal citation omitted). Because "[n]o provision of the ICA explicitly provides for a private right of action for violations of either § 26(f) or § 27(i)," the court ruled, "we must presume that Congress did not intend one." *Id.*

In a recent decision in the Eastern District of New York, *Chamberlain v. Aberdeen Asset Mgmt. Ltd.*, 2005 U.S. Dist. LEXIS 2023 (E.D.N.Y. Jan. 21, 2005), the court ruled that no implied private right of action could be read into Section 36(a).

> "Congress's explicit provision of a private right of action to enforce one section of a statute suggests that omission of an explicitly private right to enforce other sections was intentional." In the case of the ICA, Section 36(b) creates a private right of action by a shareholder against the adviser for a breach of the duty not to charge excessive fees. The implication, therefore, is that if Congress wished to create a private right of action for violations of Section 36(a), it could have done so, as it did for Section 36(b).

*Id.* at *8-9 (citations omitted).[7] *See also Touche Ross & Co. v. Reddington*, 442 U.S. 560, 572 (1979) ("When Congress wished to provide a private damage remedy, it knew how to do so and did so expressly."). The *Chamberlain* court's reasoning, which merely applied well-established

---

[7]     The parties in the *Chamberlain* case moved to vacate the court's order in order to proceed to settlement. *See* Order dated April 6, 2005, a true and accurate copy of which is attached to the Wright Aff. as Exhibit 2. The court subsequently granted the parties' motion, but expressly ruled that its Order was not a "negation of the substance of the previously issued Order." *See id.* The form of the Order, as well as the Supreme Court precedent, makes it clear that *Chamberlain* remains valid authority. *U.S. Bancorp Mortgage Co. v. Bonner Mall P'ship*, 513 U.S. 18, 27 (1994) (limiting the extent to which civil adversaries can vacate a prior opinion and recognizing that such action would "disturb the orderly operation of the federal judicial system").

federal law, applies with equal force to the instant case and requires the dismissal of Plaintiff's Section 36(a) claim.

**B.    The Complaint Fails To State A Claim Under Section 36(a)**

Even if there were a private right of action under Section 36(a) of the ICA, the allegations of inaction in plaintiff's Complaint do not rise to the standard of culpability required under Section 36(a) of the ICA. Section 36(a) prohibits "any act or practice constituting a breach of fiduciary duty involving *personal misconduct*." 15 U.S.C. § 80a-35(a) (emphasis added). To fit within this rubric, a plaintiff must allege facts that suggest a defendant engaged in "misconduct that involves self-dealing," *In re Nuveen Fund Litig.*, 1996 WL 328006, at *11 (N.D. Ill. June 11, 1996), that benefits themselves "at the expense of the Funds," *id.*, or, in the case of the trustees, blindly allows an investment adviser to engage in self-dealing. *Id.* at *12. It is therefore not enough merely to claim, as Plaintiff has here, that the Defendants "breached their fiduciary duty arising under Section 36(a) of the ICA by failing to submit Proof of Claim forms." Compl., ¶ 39. *See Prescott v. Allstate Life Ins. Co.*, 341 F. Supp. 2d 1023, 1029 (N.D. Ill. 2004) (holding that Section 36(a) "does not provide redress for a general breach of fiduciary duty"). Accordingly, Plaintiff has not alleged facts sufficient to support his Section 36(a) claim, and therefore this claim must be dismissed.

**IV.    THE COMPLAINT FAILS TO STATE A CAUSE OF ACTION UNDER SECTION 47(b) OF THE ICA**

Plaintiff's purported Section 47(b) claim fails because Section 47(b) merely establishes an equitable remedy regarding contract enforcement, and does not provide a separate stand alone cause of action. Specifically, to the extent a plaintiff can establish the impropriety of an advisory fee contract under another section of the ICA, Section 47(b) creates an equitable remedy that

court may consider.[8]  *See Green*, 186 F.R.D. at 493 ("Pursuant to 15 U.S.C. § 80a-35(b), plaintiffs do not have standing to bring a § 36(b) claim on behalf of investment companies other than the Funds in which they are security holders."); *Tarlov v. Paine Webber Cashfund, Inc.*, 559 F. Supp. 429, 438 (D. Conn. 1983) ("[P]laintiff can seek relief under Section 47 only by showing a violation of some other section of the Act.").  As such, Plaintiff simply cannot rely on Section 47(b) as the basis for an independent cause of action.

In addition, the remedy of Section 47(b) may be sought only where a contract covered by the ICA was illegally entered into or necessarily requires violation of the ICA through its performance.  *See* 15 U.S.C. §80a-46(b)(1).  *See also Tarlov*, 559 F. Supp. at 437-38.  Here, Plaintiff does not assert that there is anything improper about any advisory fee contract, but rather merely alleges that Defendants acted improperly in carrying out their fiduciary duties under Section 36(a) or (b).  *See* Compl., ¶¶ 37-44.  Because Plaintiff has not alleged that any advisory fee contract was made in violation of the ICA or caused a violation of the statute, Section 47(b) simply does not apply.

## V.    PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM UNDER SECTION 36(b)

As discussed above, the Complaint's only claim that a fund shareholder may assert directly is the claim under Section 36(b) of the ICA (Count IV).  Plaintiff cannot maintain this claim, however, because he has not, and indeed cannot, allege the elements of a claim under ICA § 36(b).

---

[8]    Section 47(b) merely provides a particular remedy in the case of violations of *other* sections of the statute: "A contract that is made, or whose performance involves, a violation of this subchapter, or of any rule, regulation, or order thereunder, is unenforceable by either party... ." ICA § 47(b)(1), 15 U.S.C. §80a-46(b)(1).

Section 36(b) of the ICA creates only a limited cause of action aimed at excessive *advisory fees. See Green v. Fund Asset Mgmt., L.P.*, 286 F.3d 682, 685 (3d Cir. 2002) ("[Section] 36(b) was intended to provide a very specific, narrow federal remedy."). Indeed, the case law to have squarely considered the question appears to be "unanimous that ... a section 36(b) claim must either involve a challenge to excessive advisory fees per se or to conduct that results in excessive advisory fees." *Rohrbaugh v. Inv. Co. Inst.*, 2002 WL 31100821, at *9 (D.D.C. July 2, 2002). Federal courts have repeatedly recognized that a complaint that does not allege *excessive advisory fees* fails to state a claim under Section 36(b) and therefore must be dismissed. *See, e.g., In re TCW/DW N. Am. Gov't Income Trust Sec. Litig.*, 941 F. Supp. 326, 343 (S.D.N.Y. 1996) (a complaint alleging that the distributor was paid "at an annual rate of 0.75% of the average daily net assets of the Fund for specific expenses incurred in promoting the sale and distribution of the Fund's shares" but not alleging receipt of compensation for advisory services failed to state Section 36(b) claim); *Rohrbaugh*, 2002 WL 31100821, at *9; *Green*, 186 F.R.D. at 491-92 (service payments received by corporate parent of fund's investment adviser could not be the basis for a Section 36(b) violation); *In re Nuveen Fund Litig.*, 1996 WL 328006, at *15 (N.D. Ill. June 11, 1996). *See also Migdal v. Rowe Price-Fleming Int'l, Inc.*, 248 F.3d 321, 329 (4th Cir. 2001) ("General breach of fiduciary duty claims which involve merely an incidental or speculative effect on advisory fees are not properly within the scope of Section 36(b).").

The recited authority requires dismissal of Count IV of Plaintiff's Complaint. The Complaint does not so much as mention the amount of advisory fees paid by any of the Funds, let alone allege that the fees paid by the Funds are in any way excessive. Rather, Plaintiff focuses exclusively on an alleged breach of general fiduciary duties – purported mismanagement

- 16 -

of the Funds by failing to complete and submit claim forms. Plaintiff simply cannot allege any breach of "fiduciary duty with respect to the receipt of compensation for services," and thus his claim falls outside the ambit of Section 36(b).

## VI. ALL OF PLAINTIFF'S CLAIMS AGAINST THE TRUSTEE DEFENDANTS FAIL AS A MATTER OF LAW

Plaintiff asserts against the Trustee Defendants common law claims for breach of fiduciary duty (Count I) and negligence (Count II), as well as a claim under Section 36(a) of the ICA (Count III) based upon the alleged common law breaches. In addition to the grounds for dismissal discussed above, the Complaint fails to state a claim against the Trustee Defendants under the law governing the duties and liabilities of directors and trustees.

As to Count I, since Plaintiff filed his Complaint as a class action, instead of a derivative suit, he must show that the Trustee Defendants breached fiduciary duties owed to him directly. *See* Compl., ¶¶ 31, 36. Under Massachusetts law[9], however, "[a] director or officer of a corporation does not occupy a fiduciary relation to individual stockholders." *Jernberg v. Mann*, 358 F.3d 131, 135 (1st Cir. 2004) (quoting 14A Howard J. Alperin & Lawrence D. Shubow, *Massachusetts Practice Series, Summary of Basic Law*, § 8.85 (3d ed. 1996)). *See also Blasberg*, 934 F. Supp. at 26 (claim for alleged breach of duty that reduces corporate assets belongs to corporation itself); *Demoulas v. Demoulas Super Mkts., Inc.*, 424 Mass. 501, 528 (1997) ("The directors of a corporation stand in a fiduciary relation *to the corporation."* (emphasis added)); *Bessette*, 385 Mass. at 809 ("[F]iduciary duty on which the plaintiffs base their claim is a duty owed to the corporation, not to individual stockholders.").

---

[9]    Massachusetts law applies to Plaintiff's common law claims since they arise out of the relations among a business trust, its trustees, and its shareholders. *See, e.g., McCall v. Scott*, 239 F.3d 808, 814, 817-18 (6th Cir. 2001); Restatement (Second) of Conflict of Laws § 302 & cmt.3 (1971 & Supp. 2004).

- 17 -

As to Count II, the Trustee Defendants cannot be held liable on claims of simple negligence. Under Massachusetts law, any responsibilities a corporate director owes to shareholders are anchored in the director's duties to the corporation. *Jernberg*, 358 F.3d at 135. In performing those duties, moreover, directors are protected by the business judgment rule, which shields them from claims based on "mere errors of judgment or want of prudence." *Ellis v. Varney*, 2004 WL 574827, at *37 (Mass. Super. Ct. Jan. 9, 2004) (citing *Allied Freightways, Inc. v. Cholfin*, 325 Mass. 630, 634 (1950)). *See also* Mass. Gen. Laws, ch. 156D, § 8.30 (2003). Thus, "[n]egligence or a failure to use reasonable care in a trustee's management decision does not amount to a cause of action." *Pederzani v. Guerriere*, 1995 WL 1146832, at *1 (Mass. Super. Ct. Aug. 11, 1995).

While corporate directors may be answerable (to the corporation) for "clear and gross negligence" in the performance of their duties, *see Allied Freightways, Inc.*, 325 Mass. at 634; *Ellis*, 2004 WL 574827, at *37, the Complaint does not state a claim based on such conduct. While in ¶ 34 of the Complaint Plaintiff asserts conclusorily that "the Defendants acted with reckless and willful disregard for the rights of Plaintiffs," Compl., ¶ 34, this assertion is supported by no factual allegations and is in essence merely a legal conclusion. The Court is not required to accept legal conclusions or unwarranted factual inferences in considering a motion to dismiss. *See, e.g., Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994) (on a motion to dismiss, "the court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged"); *see also* James Wm. Moore, Moore's Federal Practice § 12.34[1][b] (3d ed. 1997) ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.").

Accordingly, for these reasons too, Plaintiff's common law claims fail as a matter of law as against the Defendant Trustees. It follows, therefore, that the Section 36(a) claim against the Trustee Defendants – which alleges that their purported common law negligence and breach of fiduciary duty caused them to breach Section 36(a) – likewise fails as a matter of law.

## VII.  IF PLAINTIFF'S ICA CLAIMS ARE DISMISSED, PLAINTIFF'S STATE LAW CLAIMS MUST ALSO BE DISMISSED

Plaintiff alleges that this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331(a) due to the federal questions implicated by Plaintiff's claims brought under the ICA. Compl., ¶ 7. In the event that those claims are dismissed as a result of this action, the Court will no longer have federal question jurisdiction and should decline to exercise supplemental jurisdiction over Plaintiff's state law claims for negligence and breach of fiduciary duty.[10]  *See* 28 U.S.C. § 1367.

---

[10]    Plaintiff's Complaint does not allege that this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. *See* Compl., ¶ 7.

## CONCLUSION

For the foregoing reasons, the Complaint in this matter should be dismissed with prejudice as to the remaining defendants.

Dated April 29, 2005

Respectfully submitted by,

CHARLES L. LADNER, JAMES F. CARLIN, WILLIAM H. CUNNINGHAM, RONALD R. DION, STEVEN PRUCHANSKY, NORMAN H. SMITH, JOHN P. TOOLAN, JAMES A. SHEPHERDSON, DENNIS S. ARONOWITZ, RICHARD P. CHAPMAN, JR., WILLIAM J. COSGROVE, RICHARD A. FARRELL, WILLIAM F. GLAVIN, JOHN A. MOORE, PATTI McGILL PETERSON, JOHN W. PRATT, JOHN HANCOCK FINANCIAL SERVICES, INC., JOHN HANCOCK ADVISERS, LLC

By their attorneys,

_Wm. Shaw McDermott /spw_
Wm. Shaw McDermott, BBO #330860
Steven P. Wright, BBO #648575
Jason N. Golub, BBO #660114
Kirkpatrick & Lockhart Nicholson Graham LLP
75 State Street
Boston, MA   02109
(617) 261-3100

- 20 -

## **CERTIFICATE OF SERVICE**

I, Steven P. Wright, hereby certify that a true copy of the above document was served on April 29, 2005 upon all counsel of record by first class mail, postage prepaid.

