UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| WILLIAM STEGALL, on Behalf of Himself and All Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| CHARLES L. LADNER, JAMES F. CARLIN, WILLIAM H. CUNNINGHAM, RONALD R. DION, STEVEN PRUCHANSKY, NORMAN H. SMITH, JOHN P. TOOLAN, JAMES A. SHEPHERDSON, DENNIS S. ARONOWITZ, RICHARD P. CHAPMAN, JR., WILLIAM J. COSGROVE, RICHARD A. FARRELL, WILLIAM F. GLAVIN, JOHN A. MOORE, PATTI McGILL PETERSON, JOHN W. PRATT, JOHN HANCOCK FINANCIAL SERVICES, INC., JOHN HANCOCK ADVISERS, LLC, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 05-10062 DPW |
| Defendants. | ) ) | |

## REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Pursuant to Fed. R. Civ. P. 12(b)(6) and Local Rule 23.1, Defendants Charles L. Ladner,

James F. Carlin, William H. Cunningham, Ronald R. Dion, Steven Pruchansky, Norman H.

Smith, John P. Toolan, James A. Shepherdson, Dennis S. Aronowitz, Richard P. Chapman, Jr.,

William J. Cosgrove, Richard A. Farrell, William F. Glavin, John A. Moore, Patti McGill

Peterson, John W. Pratt, John Hancock Financial Services, Inc., and John Hancock Advisers,

LLC (collectively, "Defendants"), by and through their counsel, Kirkpatrick & Lockhart

Nicholson Graham LLP, respectfully submit this reply brief in further support of their Motion to

Dismiss the Complaint of Plaintiff, William Stegall ("Plaintiff").

## INTRODUCTION

Since briefing began in this case, a significant and persuasive decision has been issued in a virtually identical lawsuit brought against a different mutual fund complex. On June 8, 2005, the United States District Court for the Central District of California dismissed the complaint filed in *Mutchka v. Harris* on the same grounds asserted by the Defendants their motion to dismiss in this case. *See Mutchka v. Harris*, No. SACV0534JVSANX, 2005 WL 1414304, at *6 (C.D. Cal. June 9, 2005) (applying Massachusetts law). In fact, the Complaint in *Mutchka* and the instant Complaint are essentially identical except for the names of the parties. In dismissing the *Mutchka* complaint with prejudice, the court:

- Rejected plaintiffs' assertion that Section 36(b) of the Investment Company Act of 1940 ("ICA") could be interpreted so broadly as to encompass any breach of fiduciary duty if the supposed breach was unrelated to the investment advisor's fees. *Id.*, at *3.

- Concluded that no private right of action exists under Section 36(a) of the ICA. *Id.*, at *4.

- Concluded that all of plaintiffs' non-Section 36(b) claims were derivative, not direct. *Id.*, at *3-6.

- Held that plaintiffs' ICA Section 47(b) claim – which was contingent upon a violation of Sections 36(a) and 36(b) claims – failed as a matter of law. *Id.*, at *5.

- Concluded that plaintiffs' negligence and breach of fiduciary claims alleged an injury to the funds, and therefore must be pursued as a derivative action. *Id.*, at *5-6.

Plaintiff in the present case argues the same legal theories and claims advanced by plaintiff in the recent *Mutchka* decision. As argued below, the reasoning in *Mutchka* is persuasive and compels dismissal of Plaintiff's Complaint. Further, and as indicated in the arguments set forth below, Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss ("Plaintiff's Opposition") fails to address many of the points raised in Defendants'

memorandum submitted in support of their motion to dismiss ("Defendants' Memorandum") and advances no sound reason for departing from the controlling precedent and result in *Mutchka*.

## ARGUMENT

### I.    PLAINTIFF'S CLAIMS SHOULD BE DISMISSED FOR LACK OF STANDING.

Plaintiff fails to allege in his Complaint which mutual fund he owned, when he owned it and whether the mutual fund that he owned failed to participate in or recover monies from a class action settlement.  Rather than provide specific facts that would support an injury, Plaintiff's Opposition merely provides vague allegations that he owned one of the funds[1] that may or may not have failed to participate in a class action settlement; a speculative injury that does not support standing under controlling Supreme Court precedent.

Plaintiff instead points to the fact that he is an investor in a mutual fund within a series of funds, the John Hancock Investment Trust II ("Trust") and argues that by virtue of holding one fund in the Trust he has individual standing to pursue claims on behalf of the Trust.  Pl.'s Opp. at 5.  However, Plaintiff fails to (1) identify a single injury to his fund or any of the funds within the Trust, (2) identify a single class action settlement that any of the funds within the Trust were eligible for and (3) to identify any injury caused by any of the Defendants with respect to the management of the funds in the Trust.  Plaintiff's Opposition provides only more speculation and arguments that attempt to avoid the impact of controlling precedent.

---

[1]    Plaintiff's Complaint, which for the purposes of Defendants' motion to dismiss is the operative pleading, does not even identify the particular fund in which Plaintiff allegedly owned shares.  In Plaintiff's Opposition, Plaintiff for the first time alleges that he owned shares in the "John Hancock Small Cap Fund," which in turn he alleges is "a mutual fund within a series of funds issued by the investment company John Hancock Investment Trust II."  *See* Pl.'s Opp. at 5.  Without addressing the accuracy of Plaintiff's newly set forth allegations, it remains notable that Plaintiff to this day has failed to provide the relevant ownership dates or any other specifics with respect to his alleged injuries.  *See id.*

Caselaw supports the dismissal of claims where Plaintiff has failed to allege Article III standing as to his own claim which is a precondition for being considered a class representative. For example, in *Fallick v. Nationwide Life Ins. Co.*, 162 F.3d 410, 424 (6th Cir. 1992), the Court expressly found that "once a potential ERISA class representative establishes his individual standing to sue his own ERISA-governed plan there was no additional constitutional consideration" affecting whether they could represent a class suing other plans as well. Put another way, Plaintiff must first establish individual standing to sue based on a fund which he owned shares during the class period. Plaintiff has not alleged any such specific injury to support individual standing.[2] *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 n.1 (1992).

In addition, as set forth in Defendants' Memorandum of Law in Support of their Motion to Dismiss ("Defendants' Memorandum"), Plaintiff, as a shareholder in a mutual fund, not an investment company, does not have standing to assert a claim against the defendants. Plaintiff attempts to circumvent this deficiency by arguing that he automatically becomes a shareholder in the investment company that issues the mutual fund because mutual funds are "little more than accounting entries." Pl.'s Opp. Mem. at 4. As a consequence, Plaintiff contends that he was injured by the allegedly wrongful acts of the investment company. Plaintiff's contention is belied by case law and SEC guidance which treats mutual funds as distinct entities from the originating investment company. In addition, assuming *arguendo* that Plaintiff's allegations are accurate, his argument also fails because the mutual fund, and not Plaintiff, is the injured party. Stated differently, if Defendants failed to ensure a fund's participation in a class action

---

[2]    In *Krim v. PC Order*, 402 F.3d 489, 497 (5th Cir. 2005) the Fifth Circuit held that even a high statistical probability that a particular plaintiff *may* have purchased pursuant to a registration statement does not create standing.

settlement then the fund itself was injured by the absence of these additional monies, and not Plaintiff.

As an initial matter, a federal district court in a similar case flatly rejected a plaintiff's attempt to bring suit on behalf of all funds issued by a single business trust (including funds the plaintiff did not own) even though the funds were not "separately incorporated." *Williams v. Bank One Corp.*, No. 03C8561, 2003 WL 22964376, at *1 (N.D. Ill. Dec. 15, 2003). In *Williams*, the court likened the investment company to a parent company and its funds to subsidiaries and reasoned that "[w]hat controls over the other factors . . . is the total separateness of the beneficial interest in the funds." *Id.*; *see also In re Eaton Vance Corp. Sec. Litig.*, 219 F.R.D. 38, 40 (D. Mass. 2003) (treating four mutual funds as "separate corporate entities"). Consistent with this reasoning, the court refused to allow the plaintiff to "bootstrap upstream to the business trust and thence downstream to the other separate funds" by virtue of his ownership of shares in two of the funds. *Williams,* 2003 WL 2296476, at *1.

Similarly, Plaintiff's attempt to equate ownership in a mutual fund to ownership in an investment company runs afoul of SEC interpretative guidance. As the SEC has long recognized, "[t]he individual series of such a [investment] company are, for all practical purposes, separate investment companies. Each series of stock represents a different group of stockholders with an interest in a segregated portfolio of securities." *See Rule 18f-2 Under the Investment Company Act*, ICA Release No. 7276, Fed. Sec. L. Rep. ¶ 78,933 (Aug. 8, 1972); *see also In re Mutual Series Fund, Inc.*, SEC No Action Letter, 1995 WL 693304, at *7 (Nov. 7, 1995) (recognizing that "a series is the functional equivalent of a separate investment company

and [has] concluded that an individual series should be deemed a separate investment company in applying the various limitations and restrictions imposed by the 1940 Act "). [3]

Simply put, Plaintiff has not stated any facts that establish that he suffered injury. Therefore, Plaintiff lacks standing under Article III and, as a result, the Complaint must be dismissed in its entirety.

## II.    COUNTS I AND II SHOULD BE DISMISSED BECAUSE PLAINTIFF CANNOT BRING THESE CLAIMS INDIVIDUALLY

Counts I and II of Plaintiff's Complaint (breach of fiduciary duty and negligence against all defendants) should be dismissed because such claims must be brought, if at all, derivatively. Under Massachusetts law, a shareholder may bring a direct action for negligence and breach of fiduciary duty "if he has an injury which is separate and distinct from that suffered by other shareholders." *Sarin v. Ochsner*, 48 Mass. App. Ct. 421, 423 (2000). Where, as here, the injury claimed is merely a reduction in stock price then the suit must be brought derivatively. *Mutchka*, 2005 WL 1414304 at *5; *Lapidus v. Hecht*, 232 F. 3d 679, 683 (9th Cir. 2000).

The Court in *Mutchka* dismissed with prejudice claims for breach of fiduciary duty and negligence because they were not brought derivatively as required. *Mutchka*, 2005 WL 1414304, at *6. In *Mutchka*, as in this case, plaintiffs attempted to distinguish between mutual fund and stock ownership in order to circumvent the derivative suit requirement. The Court found plaintiffs' argument unconvincing. The Court stated that it was:

> unpersuaded that the distinction described by the Mutchkas is sufficient to
> transmute their claims from derivative to direct. Quite simply, the funds owned

---

[3]    In addition, Plaintiff cannot achieve standing by asserting a claim relating to funds which he never owned even though they were issued by the same investment company that issued the one mutual fund in which Plaintiff allegedly owned shares. In this same Court, plaintiffs have been precluded from asserting claims on behalf of shareholders who had invested in the same fund family as the named plaintiffs, though not the same funds, because the plaintiffs could not demonstrate a direct connection between themselves personally and the defendants. *In re Eaton Vance Corp. Sec. Litig.*, 219 F.R.D. at 41.

> the securities and the funds were able to participate in class-action settlements. The fact that Defendants allegedly failed to ensure the participation injured the funds. The Mutchkas' injury is identical to every other investor's in that their pro rata share of the fund allegedly would have been more valuable had Defendants participated in the settlements.

*Id.* at *5-6. The *Mutchka* Court also rejected plaintiffs' argument that the daily calculation of the funds' net asset value somehow transforms the fund's injury into a direct injury. *Id.* at *6. Looking to recent federal and state law, the court concluded that "[i]f the injury merely is a reduction in the price of stock, then the suit *must* be derivative." *Id.* at *5 (emphasis added) (citing *Lapidus*, 232 F.3d at 683 (applying Massachusetts law) and *Sarin*, 48 Mass. App. Ct. at 422-24. The instant case, being on all fours in every material respect with *Mutchka*, should be dismissed on the same legal grounds.

In a case like this, any fund shareholder's alleged injury is dependent on the alleged injury to the fund in which he or she owns shares. Plaintiff cannot suffer any independent injury because he did not own any of the subject securities. A clearer case of a derivative claims – a claim entirely dependent on an injury to the entity – cannot be imagined. *See Tooley v. Donaldson*, 845 A.2d 1031, 1035 (Del. 2004).

Plaintiff's further contention that an investment company is a mere "pass through" entity (Pl.'s Opp. at 10-11) that may be ignored for purposes of determining whether a derivative action is required has been overwhelmingly rejected by many courts. As the Third Circuit held in the leading case on this point:

> That the worth of a share of [plaintiff-shareholder's] stock is directly proportionate to the value of a mutual fund's net assets is insufficient … to alter the basic shareholder-corporation relationship, and to thereby confer upon [a shareholder] legal rights peculiar to the corporation. Nowhere in the cases do we find authority for the proposition that the ease and capacity of evaluating a shareholder's redemptive value of a mutual fund shares can vest in him a pro-rata share of the corporation's primary right to sue.

*Kauffman v. Dreyfus Fund, Inc.*, 434 F.2d 727, 733 (3d Cir. 1970).

Rather than addressing the clear and controlling precedent, Plaintiff cites a single case in support of their "pass through" contention, *Strigliabotti v. Franklin Resources*, 2005 WL 645529 (N.D. Cal. March 7, 2005). Notably, *Strigliabotti* is at odds with the overwhelming weight of authority[4], including the recent decision in *Mutchka*, which held that claims for breach of fiduciary duty and negligence such as those asserted in this matter are without question derivative in nature.

Last, Plaintiff argues that Defendants allegedly breached duties owed directly to him as a shareholder, and therefore he is entitled to assert a direct claim. The test under Massachusetts law in determining the viability of a breach of fiduciary duty claim in this context is whether Plaintiff's "injury is distinct from the injury suffered generally by the shareholders as owners of corporate stock." *Green v. Nuveen Advisory Corp.*, 186 F.R.D. 486, 489 (N.D. Ill. 1999) (applying Massachusetts law and dismissing claims of breach of fiduciary duty by the investment companies, the advisors, and the broker-dealers because plaintiffs' injuries were not unique in comparison to injuries suffered by common shareholders). Plaintiff fails to cite any Massachusetts law holding that advisors or trustees owe duties directly to individual shareholders, rather than to the mutual funds. To the contrary, Massachusetts courts have long held that "the same duty of trust and strict good faith owed by directors and officers to the corporation itself did *not* extend from them to the individual stockholders." *Jernberg v. Mann*, 358 F.3d 131, 137 (D. Mass. 2004); *Goodwin v. Agassiz*, 283 Mass. 358, 361 (1933) ("The contention that directors also occupy the position of trustee toward individual stockholders in the corporation is plainly contrary to repeated decisions of this court and cannot be supported.").

---

[4]     *Strigliabotti* does not cite a single case discussing whether particular types of claims involving mutual funds are direct or derivative.

Here, Plaintiff asserts classic derivative claims. He alleges that all shareholders have been injured by a diminution in the assets of the funds. *See* Compl. ¶¶ 5, 25, 32, 36, 39. Thus, the claims are derivative and Counts I and II must be dismissed. *See Kaufman*, 434 F.2d at 733; *Green*, 186 F.R.D. at 490; *Mutchka*, 2005 WL 1414304, at *6.

## III. COUNT III MUST BE DISMISSED BECAUSE THERE IS NO PRIVATE RIGHT OF ACTION UNDER 36(a)

Section 36(a) of the ICA addresses breaches of fiduciary duties that involve "personal misconduct." 15 U.S.C. § 80a-35(a). The statute specifically authorizes the SEC, not private individuals, to bring an action under the statute, nor is there an implied right of private action in the statute. *Id.*

Prior to 2001, the Supreme Court had set forth a four-factor analysis to determine whether an implied right of action existed in a statute. *Cort v. Ash*, 422 U.S. 66 (1975). However, with its 2001 decision in *Sandoval*, the Court limited this earlier ruling by stating that, in ascertaining legislative intent to imply a private right of action, "[w]e have never accorded dispositive weight to context shorn of text." *Alexander v. Sandoval*, 532 U.S. 275, 288 (2001). Seven months later, the Supreme Court reinforced this approach by stating that "we have retreated from our previous willingness to imply a cause of action where Congress has not provided one." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 67 (2001).

Since *Sandoval*, courts have refused to find an implied right of action in the ICA. In *Olmstead v. Pruco Life Ins. Co.*, 283 F.3d 429, 432 (2nd Cir. 2002), the Second Circuit declined to find an implied right of action under the ICA stating that "[a] court must begin [its] search for Congress's intent with the text and structure of the statute, and cannot ordinarily conclude that Congress intended to create a right of action when none was explicitly provided" (internal quotations omitted). Perhaps most importantly, two recent cases applying the *Sandoval* analysis

now mandated by the Supreme Court have held that there is no private right of action under Section 36(a). *Mutchka*, 2005 WL 1414304 at *4 ("This Court is persuaded by the reasoning in *Olmstead* and finds that Congress did not intend to create a private right of action in Section 36(a)."); *Chamberlain v. Aberdeen Asset Mgmt. Ltd.*, 2005 WL 195520, at *4 (E.D.N.Y. Jan. 21, 2005) ("This Court finds that when *Olmstead* and *Sandoval* are applied to [Section 36(a) of the ICA], it is evident that the provision does not give rise to a private right of action.").

Not surprisingly, Plaintiff relies principally on several pre-*Sandoval* cases that found implied rights of action.[5] Further, the only post-*Sandoval* case Plaintiff relies on, *Strougo v. Bassini*, 282 F.3d 162 (2d Cir. 2002), is inapposite. In *Strougo*, the Second Circuit did not hold that a private right of action exists under Section 36(a). *Id.* at 174. Instead, the question presented was whether claims for coercion under the common law and Section 36(a) could be brought in a direct or derivative action, and in particular, whether "Maryland's law of shareholder standing would frustrate the specific federal policy objectives underlying the [ICA]" *Id.* at 165.

Last, Plaintiff purports to rely upon legislative history, but that argument is equally without merit. Under *Sandoval*, a court may turn to a statute's legislative history to discern whether an implied private right of action exists "only if statutory text and structure have not

---

[5]    The Supreme Court in *Sandoval* discredited earlier decisions that applied a less rigorous test as part of an "*ancien regime.*" *Sandoval*, 532 U.S. at 287. The Second Circuit, in *Olmstead*, later listed many of the cases cited by Plaintiff as part of this disfavored group: *Bancroft Convertible Fund, Inc. v. Zico Inv. Holdings, Inc.*, 825 F.2d 731 (3d Cir. 1987); *Meyer v. Oppenheimer Mgmt. Corp.*, 764 F.2d 76 (2d Cir. 1985); *McLachlan v. Simon*, 31 F. Supp. 2d 731 (N.D. Cal. 1998); *Young v. Nationwide Life Ins. Co.*, 2 F. Supp. 2d 914 (S.D. Tex. 1998); *In re Nuveen Fund Litig.*, No. 94C360, 1996 WL 328006 (N.D. Ill. June 11, 1996); *Blatt v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 916 F. Supp. 1343 (D.N.J. 1996); *Langner v. Brown*, 913 F. Supp. 260 (S.D.N.Y. 1996); *Carr v. Equistar Offshore, Ltd.*, No. 94-Civ-5567, 1995 WL 562178 (S.D.N.Y. Sept. 21, 1995); *Seidel v. Lee*, No. Civ-A-93-494, 1994 WL 913930 (D. Del. Oct. 14, 1994); *In re ML-Lee Acquisition Fund II, L.P.*, 848 F. Supp. 527 (D. Del. 1994). *See Olmstead*, 283 F.3d at 434 n.4. As such, Plaintiff reliance on pre-*Sandoval* and *Olmstead* cases is misguided.

conclusively resolved this issue." *Univ. of Colorado Hosp. Auth. v. Denver Publ'g Co.*, 340 F. Supp. 2d 1142, 1144 (D. Colo. 2004). Where, as here, there is overwhelming textual evidence of legislative intent not to provide a private right of action (such as the side-by-side presence of a private right in Section 36(b) and absence of such a right in Section 36(a)), there is "no ambiguity on the question of an implied private right of action that legal context might clarify."[6] *Olmstead*, 283 F.3d at 435.

In sum, Plaintiff cannot sustain a private claim under Section 36(a) of the ICA because such an action is not authorized by Congress or by the courts. Accordingly, Count III of Plaintiff's Complaint must be dismissed.

## IV.    PLAINTIFF'S 36(b) CLAIM BEARS NO RELATIONSHIP TO THE RECEIPT OF FEES AND THEREFORE MUST BE DISMISSED

Plaintiff has not alleged a cognizable breach of fiduciary duty claim under Section 36(b). "Section 36(b) is clear that it provides a cause of action only for a breach of fiduciary duty *with respect to the receipt of compensation for services*." *Mutchka*, 2005 WL 1414304, at *6 (emphasis in original). Plaintiff's Opposition Memorandum states "Plaintiff has alleged that *any and all* compensation Defendants received for their services to fund shareholders is excessive." Pl.'s Opp. at 19. A review of the Complaint reveals no such allegation. Indeed, Plaintiff fails to mention fees *at all* in his Complaint.[7] The leading case law has interpreted Section 36(b) to be limited in nature, concluding that "[s]ection 36(b) [is] sharply focused on the question of whether

---

[6]    Plaintiff also relies on a single House Committee report from 1980 – ten years after Congress created Section 36(a). Pl.'s Opp. at 15. As the Supreme Court has held, "the interpretation given by one Congress (or a committee or Member thereof) to an earlier statute is of little assistance in discerning the meaning of that statute." *Central Bank of Denver v. First Interstate Bank of Denver*, 511 U.S. 164, 185 (1994).

[7]    Plaintiff's Complaint describes the alleged breach as a failure "to submit Proof of Claim forms or to otherwise participate in settled securities class actions and thereby recover money rightfully belonging to the Fund investors." Compl., ¶ 43.

the fees themselves were excessive." *Migdal v. Rowe Price-Fleming Int'l*, 248 F.3d 321, 328 (4th Cir. 2001); *see also* 15 U.S.C. § 80a-35(b) (a claim under § 36(b) exists only for a breach of fiduciary duty "with respect to the receipt of compensation for services"); *Green v. Fund Asset Mgmt., L.P.*, 286 F.3d 682, 685 (3d Cir. 2002) (a "fiduciary duty imposed by Section 36(b) is significantly more circumscribed than common law fiduciary duty doctrines").  Plaintiff's expansive reading of 36(b) is an impermissible attempt to transform Section 36(b) into a vehicle for challenging an investment advisor's general fiduciary duties.  As the court in *Mutchka* pointed out, an expansive interpretation of what may constitute "excessive fees" for the purpose of 36(b) would allow virtually any breach of fiduciary duty claim to be transformed into a 36(b) claim, a result which is wholly inconsistent with the correct statutory interpretation.  *Mutchka*, 2005 WL 1414304, at *3.

Plaintiff's reliance on *Krantz v. Prudential Invs. Fund Mgmt.*, 77 F. Supp. 2d 559 (D.N.J. 1999), is misplaced because it did not address the threshold question of whether the alleged breach of fiduciary duty is a proper 36(b) claim.  The plaintiff in *Krantz* characterized "all the fees" as excessive "without pleading any facts that, if true, would demonstrate that the fee is 'so disproportionately large that it bears no reasonable relationship to the services rendered.'" *Krantz*, 77 F. Supp. 2d at 565.  The court in *Krantz* held that these allegations failed to sustain a claim under Section 36(b).  *Id* at 566 (citation omitted), *affirmed on appeal*, 305 F.3d 140, 143 (3d Cir. 2002).

Accordingly, Count IV of Plaintiff's Complaint must be dismissed because Plaintiff has not and cannot state a claim under Section 36(b).

## V.    COUNT V SHOULD BE DISMISSED BECAUSE SECTION 47(b) IS SOLELY REMEDIAL

Under Section 47(b) of the ICA "Plaintiff can seek relief under Section 47 only by showing a violation of some other section of the ICA." *Tarlov v. Paine Webber Cashfund, Inc*., 559 F. Supp. 429, 438 (D. Conn 1983); Pl.'s Opp. at 19.  Plaintiff's Section 47(b) claim should be dismissed because it provides an equitable remedy rather than a distinct cause of action or basis for liability.  Further, Plaintiff cannot avail himself of any equitable remedies under this section because he has failed to establish a claim under either Section 36(a) or Section 36(b), as set forth in Sections III and IV, *supra*.  Consequently, Plaintiff's cause of action under Section 47(b) should be dismissed.  *Mutchka*, 2005 WL 1414304, at *5.

## VI.    PLAINTIFF'S STATE LAW CLAIMS SHOULD BE DISMISSED FOR LACK OF JURISDICTION

Plaintiff's state law claims for negligence and breach of fiduciary duty should be dismissed for an additional reason. As indicated above, Plaintiff failed to bring these claims derivatively as required.  *See* Section II.A., *supra*.  If  Plaintiff's claims under the ICA are dismissed, this Court will no longer have subject matter jurisdiction over this matter under 28 U.S.C. § 1331(a).  Additionally, this Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims and, in the absence of a proper prior demand, should decline to grant leave to replead these claims on a derivative basis.  *See Mutchka*, 2005 WL 1414304, at *6; *see also*, Defendants' Memo. at 20.

## **CONCLUSION**

For the foregoing reasons, and for those reasons set forth in Defendants' Memorandum of

Law in Support of their Motion to Dismiss, the Complaint should be dismissed in its entirety.

Respectfully submitted by,

CHARLES L. LADNER, JAMES F.
CARLIN, WILLIAM H.
CUNNINGHAM, RONALD R. DION,
STEVEN PRUCHANSKY, NORMAN
H. SMITH, JOHN P. TOOLAN, JAMES
A. SHEPHERDSON, DENNIS S.
ARONOWITZ, RICHARD P.
CHAPMAN, JR., WILLIAM J.
COSGROVE, RICHARD A. FARRELL,
WILLIAM F. GLAVIN, JOHN A.
MOORE, DPW
PATTI McGILL PETERSON, JOHN W.
PRATT, JOHN HANCOCK
FINANCIAL SERVICES, INC., JOHN
HANCOCK ADVISERS, LLC,

By their attorneys,

June 30, 2005

/s/ Steven P. Wright
Wm. Shaw McDermott, BBO #330860
Steven P. Wright, BBO #648575
Jason N. Golub, BBO #660114
Kirkpatrick & Lockhart Nicholson
Graham LLP
75 State Street
Boston, MA   02109
(617) 261-3100

## <u>CERTIFICATE OF SERVICE</u>

I, Steven P. Wright, hereby certify that a true copy of the above document was

electronically served on June 30, 2005 upon all counsel of record.

/s/ Steven P. Wright
Steven P. Wright, BBO #648575